## RINDGE *v.* WALKER.

Entries by a town officer, since deceased, made apparently in the usual course of business and in pursuance of his official duty, are admissible in evidence.

ASSUMPSIT, on a promissory note for $775, payable to the town of Rindge, dated March 19, 1874, and signed by the defendant. Facts found by a referee. The note was given for the balance of a former note of $2,400, which was given for the balance of uncollected taxes for the year ending March, 1872, by the defendant, who was collector of taxes for Rindge that year. When the collector settled with the treasurer, in March, 1872, the several payments by the collector during the year of taxes and abatements were added, and the sum deducted from the amount of the collector's warrant, leaving a balance of $2,400. The collector gave up his several receipts, and took a single one for the whole sum paid, and another for the $2,400 note. The defence was, that $800 had been paid which the collector was not credited with, and that the $2,400 note was too large by that sum.

In August, 1879, the defendant found among his papers a receipt for $800, dated October 24, 1871, signed by the treasurer of the town, one Raymond, and claimed that this represented the amount which had not been allowed him in his settlement in March, 1872.

A book, claimed by the plaintiffs to be the one on which the treasurer for the fiscal year 1871–'72 kept his account with the town, was offered by the plaintiffs in evidence, and objected to by the defendant. Raymond died in May, 1879. The book was found, on search being made by Mrs. Raymond, in a box containing papers and memorandum-books of her husband, at his brother's house in Jaffrey, where he died. It was in Raymond's handwriting, had written upon the outside the words, "O. J. Raymond, Town Treasurer, March 1, 1871," in the same hand, and contained entries under various dates from March, 1871, to March, 1872, of moneys received and paid for the town, and for a church society of which Raymond was also treasurer, the word "society" being written after the items of the society account.

The book was identified by Robbins, Raymond's successor, who settled with him in March, 1872, Raymond reading items from a book which he took from his breast pocket, and Robbins comparing and checking the corresponding items on the book in question. Mrs. Raymond identified the book as being in her husband's handwriting, and had seen him write in it during the year he was treasurer, sometimes seeing him write entries of money paid, and sometimes seeing the entries after they were made. Ingalls, an expert in accounts, assisted in 1873 in investigating Raymond's accounts with the town, Raymond having, when he was treasurer, borrowed

money on the credit of the town without authority and appropriated it to his own use. At that time the book was in Raymond's possession, was examined by Ingalls, and he now identifies it as the same one and in the same condition as then. No book, like that which Robbins saw Raymond take from his pocket and read from, could be found. There was no evidence that Raymond kept his accounts on any other book than the one in question, and the one Robbins saw Raymond take from his pocket. On this evidence the book was received, subject to the defendant's exception. The entries in the book showed that the defendant had been credited with all his payments, including the $800 receipt. No exception was taken before the referee, excepting to the admission of the book in evidence. The referee found for the plaintiffs the amount of the note and costs.

If the defendant's exception is overruled, there is to be judgment on the report; otherwise, a new trial.

*Batchelder & Faulkner*, for the plaintiffs.

*H. W. Parker*, for the defendant.

BLODGETT, J. The deceased was the sworn officer of the town, to whom all money received by the defendant as collector, on account of taxes, was payable, and was moreover required by law to keep an account and record of his financial transactions, and make official report to the town. Laws 1869, *c.* 26, *ss.* 3, 4. The book in question purported on the outside to be such official record; was so used by him in settling with his successor, and in the examination made by the expert; had not been since altered; contained apparently the original entries, such as it was his duty to make in the usual course of his official business, both against and for his interest; and was in his hand-writing. It was therefore admissible upon the issue between the parties (1 Gr. Ev., *s.* 115), and afforded evidence competent to be considered and weighed by the referee in connection with the other evidence in the case. The objection to its credibility did not affect its competency, but only the weight to which it was entitled. The exception is overruled.

*Judgment on the report.*

ALLEN, J., did not sit: the others concurred.